# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE L. SIMS,<br><br>      **Plaintiff,**<br><br>  *vs.*<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      **Defendant.** | CAUSE NO.  1:15-cv-80-SEB-DKL |

## REPORT AND RECOMMENDATION

Plaintiff Jane L. Sims sues for judicial review of the defendant Commissioner's denial of her applications for a period of disability and disability-insurance benefits. The district judge referred the issues to this magistrate judge for submission of a report and recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  *Order Referring Issues to Magistrate Judge* [doc. 14].

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402

1

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ▪ 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

2

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's

ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for

4

a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

**Background**

Ms. Sims applied for benefits in January 2012, alleging a disability-onset date of December 6, 2011. Her claims were denied initially and on reconsideration. A hearing before an ALJ was held in July 2013 during which Ms. Sims and a vocational expert testified. Ms. Sims was represented by counsel at the hearing.

The ALJ found that Ms. Sims meets the insured-status requirements of the Act through December 31, 2016. At step one, the ALJ found that Ms. Sims had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Ms. Sims has the severe impairments of obesity, asthma, allergies, and fibromyalgia. At step three, the ALJ found that her impairments, severe and non-severe, singly or in combination, do not meet or medically equal any of the listing of impairments. She examined listing 3.02A and 3.03, for Ms. Sim's asthma; S.S.R. 02-1p, for her obesity; and she considered Ms. Sim's allergies and fibromyalgia against the listing, although there are no specific listings for those impairments.

For the purposes of steps four and five, the ALJ determined Ms. Sims' RFC. She found that Ms. Sims has the RFC to perform a limited range of sedentary work, with additional postural and environmental restrictions. At step four, she found that this RFC allows Ms. Sims to perform past relevant work and, therefore, she is not disabled.

The Commissioner's Appeals Council denied Ms. Sims' request to review the ALJ's decision, which rendered that decision the final decision of the Commissioner on Ms. Sims' claims and the one that the Court reviews.

## Discussion

Ms. Sim's asserts two errors in the ALJ's decision.

**1. Rejection of Dr. Aiken's RFC assessment.** Dr. Eric Aitken, M.D., is Ms. Sims' treating physician and he completed a medical source statement ("Medical Assessment of Ability To Do Work-related Activities (Physical)," in which he rated various exertional capabilities and limitations of Ms. Sims. (R. 247-50.) In sum, Dr. Aitkin opined that Ms. Sims was limited to sedentary work, "constantly" experienced pain severe enough to interfere with attention and concentration, and would miss three days of work each month. The ALJ found that, while Dr. Aitken's assessment was largely consistent with her own, it had reduced probative value because (1) it was not fully consistent with Ms. Sims' activities of daily living, which show that she is more functional, and (2) the opined medication side effect of drowsiness and pain-caused constant interference with concentration are not documented in the objective medical evidence. (R. 19.) The ALJ found that Dr. Aitken's opinion did not outweigh those of the state-agency medical consultants which found that Ms. Sims could perform light work. The ALJ found the state-agency opinions to be well grounded in the objective medical evidence and were associated with good explanations, and she assigned them great weight. (*Id.*)

7

Ms. Sims argues that the ALJ "arbitrarily rejected" Dr. Aitken's assessment because her evaluation of it was based on the lack of objective medical evidence, which does not exist for fibromyalgia. (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 18] ("*Brief*"), at 8-9.) The Commissioner's response only repeats the ALJ's conclusions that Dr. Aitken's opinions are inconsistent with Ms. Sims' daily activities and that the side effects of drowsiness and constant interference with concentration are not reflected in the objective medical evidence. (*Defendant's Memorandum in Support of the Commissioner's Decision* [doc. 23] ("*Response*"), at 9-11.) [2]

The ALJ did not specify the daily activities of Ms. Sims that are inconsistent with the exertional ratings and functional limitations found by Dr. Aitken and the Commissioner also does not attempt any explanation. The Court will not search and analyze the record and the ALJ's decision to find what it considers to be inconsistencies. Thus, the ALJ's discounting of Dr. Aitken's opinion because of inconsistent daily activities is unreviewable. Similarly, there is no explanation, either from the ALJ or the Commissioner, of what objective medical evidence reasonably should be present to confirm Dr. Aitken's opinion opinions that Ms. Sims experiences drowsiness as a medication side effect and to confirm that she "constantly" experiences pain severe

---

[2] Although Ms. Sims' argument includes one sentence stating that the ALJ's decision should be reversed because she failed to accord controlling weight to the opinion of Dr. Aitken, as a treating physician, (*Brief*, at 8), she did not make a controlling-weight argument. Her only developed argument was that the ALJ's discounting of Dr. Aitken's opinions because of the lack of supporting objective medical evidence was arbitrary and erroneous given the subjective nature of fibromyalgia.

enough to "interfere with concentration." (R. 250.) The ALJ noted that Ms. Sims' daily activities "show that she has *some* degree of concentration, persistence and pace," (R. 14, ¶ 3 (emphasis added)), which suggests that her concentration is interfered with in some way. Again, the lack of an articulated rationale, an analysis, prevents judicial review.

These are not harmless gaps. If there these (only) two grounds given by the ALJ for discounting Dr. Aitken's opinions are erroneous, then Dr. Aitken's opinions should be given controlling weight. Ms. Sims has shown error in the ALJ's assignment of weight to Dr. Aitken's opinions.

**2. Past relevant work.** Ms. Sims contends that the ALJ erred in his step-four finding because her past relevant work did not constitute substantial gainful activity because it was performed only part-time. (*Brief*, at 12.) The Commissioner responds that Ms. Sims is misreading the record. The Commissioner is correct. She testified that, in her last job, she worked thirty hours each week, except starting with the second of her three years working from home, when she worked only twenty hours each week. Before this time, about three or four years before she ceased working, she was working full-time, (R. 42-43), which would have been from 2004 until approximately 2006. Ms. Sims does not contend that any of her other past relevant work that the ALJ found that she could perform with her RFC was performed only part-time. The Commissioner also responds that part-time work can qualify as substantial gainful activity if income thresholds are met, 20 C.F.R. §§ 404.1572, 404.1574, and Ms. Sims' earnings records show that, during all

9

of her years at her last employer, she met the minimum earning requirement for substantial gainful activity, (*Response*, at 13). The vocational expert testified that Ms. Sims' past relevant work could be performed with the ALJ's defined RFC, which provided a substantial basis for the ALJ's step-four finding.

Substantial evidence supports the ALJ's finding that Ms. Sims could perform her past relevant work at the RFC that the ALJ defined for her. However, the Court has found, above, that the ALJ's RFC analysis is erroneous and must be reconsidered.

## Conclusion

Substantial evidence does not support the ALJ's evaluation of and assignment of weight to the following expert opinions of Dr. Aitken recorded in his *Medical Assessment of Ability To Do Work-Related Activities (Physical)*, (R. 247-50), which renders the ALJ's RFC and disability determinations unsupported by substantial evidence. Judgment should be entered in favor of Ms. Sims, reversing the Commissioner's denial of her claim for benefits and remanding that claim to the Commissioner for reconsideration of the ALJ's evaluation of Dr. Aitken's opinion within the limits described above, and consequent reconsideration of Ms. Sims' eligibility for benefits.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those

portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**  02/08/2016

*/s/ Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.